# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

EMMANUEL NWAOHIA,

        Plaintiff,

    v.

WAL-MART STORES, INC., WAL-
MART STORES EAST, LP, and
JOHN DOES 1-5 AND 6-10,

        Defendants.

No. 1:18-cv-10648-NLH-AMD

**OPINION**

---

**APPEARANCES**:

EMMANUEL NWAOHIA
1900 LAUREL ROAD
APT L-94
LINDENWOLD, NJ 08021

    *Plaintiff appearing pro se*.

SALVADOR PEDRO SIMAO
DAVID S. KIM
FORD & HARRISON
300 Connell Drive
Suite 4100
Berkeley Heights, NJ 07922

    *On behalf of Defendants*.

**HILLMAN**, District Judge

    This matter concerns claims by Plaintiff Emmanuel Nwaohia, appearing *pro se*, that Defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, and John Does 1-5 and 6-10 discriminated against him in violation of the New Jersey Law Against Discrimination. Presently before the Court is Defendants' motion for summary judgment on all claims. For the reasons

expressed below, Defendants' motion will be granted, and Plaintiff's claims will be dismissed.

**BACKGROUND**

Plaintiff was first hired by Walmart to work in its Turnersville, New Jersey store in 2004. (ECF No. 54-1 ("Def. SOMF") at ¶ 1). Over the next several years, Plaintiff was repeatedly reprimanded, in the form of "coachings," for various acts of insubordination and disrespect towards his colleagues, including throwing boxes and yelling at co-workers and supervisors both in private and in public areas of the store. Id. at ¶¶ 13-16. He was eventually fired from that position in February 2008 for insubordination, shortly after which he was re-hired for the same role in Defendants' Deptford, New Jersey store in August 2008. Id. at ¶¶ 2-3.

Throughout his time in both locations, Plaintiff was employed as a Maintenance Associate. The job description for his position makes clear that his "job duties and essential functions included cleaning all areas of the facility utilizing company tools, machinery, and approved chemicals, and to perform routine maintenance on machines and other equipment." Id. at ¶ 27 (citing ECF No. 54-3, Ex. 14). And, importantly, it specifies that Maintenance Associates are expected to be able to engage in a number of physical activities, including but not limited to moving, lifting, carrying, and placing merchandise

2

and supplies weighing up to 25 pounds without assistance, as well as the ability to reach overhead and below the knees by bending, twisting, pulling and stooping.  Id. at ¶ 28.

However, on February 28, 2014, Plaintiff's health care provider advised Defendants that Plaintiff would be undergoing a surgical procedure the following month and would be incapacitated until June 2014, and that upon his return he would not be able to lift more than 10 pounds, and should refrain from activities such as bending, twisting and pulling.  Id. at ¶ 29 (citing ECF No. 54-3, Ex. 15).  Based on this, Plaintiff was approved for the full 12 weeks of protected medical leave assured to him by the Family and Medical Leave Act ("FMLA"). When Plaintiff failed to return to work by the end of this twelve weeks, Defendants then contacted him, and agreed to provide him with additional paid leave under their own policy. Id. at ¶¶ 31-32.

Eventually, on June 19, 2014, Plaintiff's health care provider informed Defendants that he would be able to return to work, but further informed them that he may only "run the Zamboni[] machine and sweep the floor."  Id. at ¶ 33.  Based on this note from his healthcare provider, Defendants then permitted Plaintiff, despite the stated duties and requirements of his job, to move forward performing only those two tasks; Plaintiff himself conceded in his deposition that, from his

return to work in June 2014 until the date of his termination in 2017, those two tasks were the entirety of his responsibilities. Id. at ¶¶ 34-36.

Plaintiff alleges that throughout his time in the Deptford location, he was subjected to harassment on the basis of his race and national origin, as a black man of African descent. Although Plaintiff himself has put forward no evidence to support these allegations, in the excerpts from his deposition transcript submitted by Defendants he names a list of people who engaged in some form of harassment, although he does not provide further details on most of them. The only specific allegations put forward are that two co-workers, a man named David and his daughter Paula, called him a series of racially discriminatory terms at some point between 2011 and 2017.

While Plaintiff attributes his issues at work and ultimate termination from this second position to this racial and national origin harassment and discrimination based on his disability, throughout his time at the Deptford location, Plaintiff was again repeatedly reprimanded and given "coachings" for the same forms of disrespect and insubordination he was terminated for in his first Walmart job. Id. at ¶¶ 20-25. Finally, after having been reprimanded eight separate times and specifically warned in September 2017 that "the next level of action" for any future behavioral issues would be termination of

his employment, Plaintiff threw a greeting card at a supervisor during an altercation on November 11, 2017, and was subsequently terminated. Id. at ¶¶ 23-25.

Then on May 18, 2020, Plaintiff, represented by counsel, filed his complaint in New Jersey state court. (ECF No. 1-1, Ex. A). Defendants removed the action to this Court on June 15, 2018. (ECF No. 1). The parties then participated in an arbitration program and engaged in discovery on Plaintiff's claims. Eventually, on July 12, 2019, Plaintiff's counsel filed a motion to withdraw as attorney, and filed an *ex parte* certification explaining the reasons for the request (ECF No. 24 and 25); the Court granted the motion on July 24. (ECF No. 27). Since that that point, Plaintiff has represented himself *pro se*.

Finally, on January 28, 2021, Defendants filed the presently pending motion for summary judgment. After Plaintiff failed to file an opposition brief, Judge Williams, the magistrate judge assigned to the matter, held a status conference after which she granted him additional time within which to file an opposition. Rather than filing a proper brief, Plaintiff filed a series of letters addressed both to the Court and to opposing counsel on February 22, March 1, and March 4, 2021 — those letters largely repeated the conclusory allegations found in Plaintiff's complaint, and expressed frustration with Defendants' counsel's apparent communications with Plaintiff

regarding the pending motion and previous settlement discussions. (ECF No. 58, 59, and 60). Defendants, choosing to treat those letters as Plaintiff's opposition to the motion, then timely filed a reply brief in further support of their motion on March 18. (ECF No. 61). Plaintiff then filed yet another letter on March 22, which mostly repeated statements from his previous letters and expressed frustration that Defendants' counsel had served on him the reply brief and supporting documents. (ECF No. 62). The time within which to oppose or support the motion has since passed, and the motion is therefore ripe for adjudication.

## DISCUSSION

### I.   Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000.

### II.   Standard for Motion for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v.

Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague

statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir.
2001).

### III. **<u>Analysis</u>**

Plaintiff here has asserted five separate claims under the
NJLAD: his complaint includes claims for (1) disability
discrimination, (2) perception of disability discrimination, (3)
failure to accommodate, (4) racial harassment, and (5) national
origin harassment.  Finally, he asserts a claim for equitable
relief, seeking a declaration from this Court that his rights
were violated and a number of orders directing Defendants to,
amongst other things, reinstate him as an employee.

The Court first notes that, as described above, the present
motion is largely unopposed.  Rather than filing an opposition
brief and statement of disputed material facts under Local Civil
Rule 56.1, Plaintiff instead has filed a series of letters —
some addressed to the Court, some addressed to opposing counsel
— which reassert in general terms his claims, complain about his
lack of legal counsel and communications with Defendants'
counsel, and attach older letters he had sent to Defendants'
counsel and some of the previous filings in this case.  The
letters make no attempt to address any of the legal arguments
put forth in Defendants' moving brief, nor to put forward
evidence in support of his claims.  However, a plaintiff's
"failure to respond 'is not alone a sufficient basis for the

entry of a summary judgment.'" Kirkland-Rodriguez v. Cooper
University Health Care, No. 1:16-cv-3999 (NLH/KMW), 2017 WL
5889234, at *3 (D.N.J. Nov. 29, 2017) (quoting Muskett v.
Certegy Check Servs., Inc., No. 08-3975, 2010 WL 2710555, at *3
(D.N.J. July 6, 2010). "The Court must still determine, even
for an unopposed summary judgment motion, whether the motion for
summary judgment has been properly made and supported and
whether granting summary judgment is 'appropriate,' as required"
by the Federal Rules of Civil Procedure. Id.

Accordingly, the Court will address the merits of this
summary judgment motion despite the lack of a proper response to
the motion from Plaintiff. However, a movant who files a proper
Local Civil Rule 56.1 statement of undisputed material facts
which is unopposed by the opposing party receives the benefit of
the assumption that such facts are admitted for purposes of the
summary judgment motion. See L. Civ. R. 56.1 (providing that
"any material fact not disputed shall be deemed undisputed for
the purposes of the summary judgment motion"). To the extent
that Defendants' Rule 56.1 statements of fact are undisputed at
this stage, the Court will therefore treat them as admitted for
the purpose of adjudicating the present motion.

A. **Disability Discrimination Claims**

Plaintiff's Complaint asserts two disability-related claims
under the NJLAD: one for disability discrimination, and another

9

for perception of disability discrimination.  While Counts I and II do not specify exactly which of Defendants' actions he believes constituted discrimination, the Complaint alleges both that Defendant was "written up four times for refusing to do tasks that he was medically unable to do" and that he was eventually terminated due, at least in part, to his disability. (ECF No. 1-1 at ¶¶ 14-15, 28-29).

The NJLAD forbids "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment."  N.J. Stat. Ann. § 10:5-4.1.  Plaintiff's two disability-related claims are properly considered together, as a "perception of disability discrimination" claim "merely provides an alternative definition for a motivation prohibited by the statute; it does not present a separate cause of action."  Cotto v. Ardagh Glass Packing, Inc., 2018 WL 3814278, at *4 (D.N.J. Aug. 10, 2018) (citing Rogers v. Campbell Foundry Co., 185 N.J. Super. 109, 112 (App. Div. 1982); see also Poff v. Caro, 549 A.2d 900, 903 (N.J. Super. Ct. Law Div. 1987) ("discrimination based on a perception of a handicap is within the protection of the Law Against Discrimination.").

NJLAD claims are analyzed under the familiar burden-

shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S.
792 (1973). Viscik v. Fowler Equip. Co., 800 A.2d 826, 833
(N.J. 2002). Under that framework, "a plaintiff must first
establish a prima facie case of discrimination. If the
plaintiff succeeds, the defendant must articulate a legitimate,
nondiscriminatory reason for the adverse employment action. The
burden then shifts back to the plaintiff to prove, by a
preponderance of the evidence, that the articulated reason was a
mere pretext for discrimination." Capps v. Mondelez Global,
LLC, 847 F.3d 144, 152 (3d Cir. 2017) (quoting Ross v. Gilhuly,
755 F.3d 185, 193 (3d Cir. 2014)).

The Court therefore begins by assessing whether Plaintiff
has established a *prima facie* case of disability discrimination.
"The specific elements of a *prima facie* case of disability
discrimination vary to some extent, like all employment
discrimination claims, depending on the specific cause of
action." Tourtellote v. Eli Lilly Co., 636 F. App'x. 831, 848
(citing Victor v. State, 203 N.J. 383, 4 A.3d 126, 140-41
(2010)). Defendants, for their part, appear to focus largely on
Plaintiff's claim that he was terminated due to his disability.
To establish a *prima facie* case of disability discrimination for
discriminatory discharge under the NJLAD, "a plaintiff must
demonstrate that: (1) [he] is the member of a protected class,
specifically that [he] has or is perceived to have a disability

11

as defined by the NJLAD; (2) [he] was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; (3) [he] experienced an adverse employment action; and (4) the employer sought someone else to perform the same work, or did fill the position with a similarly-qualified person." Id. at 848 (citing Victor, 203 N.J. 383, 4 A.3d at 141-42).

However, Plaintiff also clearly alleges that he was disciplined multiple times for failure to perform tasks his disability precluded him from performing; assuming he meant this as a separate disability discrimination claim, the *prima facie* elements for such a claim are highly similar, with only slight differences: "[t]o state a prima facie cause of action for disability discrimination, Plaintiff must show he: (1) was disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) suffered an otherwise adverse employment decision as a result of discrimination." Marsh v. GGB, LLC, 455 F. Supp. 3d 113, 124 (D.N.J. 2020) (Hillman, J.) (citing Stewart v. Cty. of Salem, 274 F. Supp. 3d 254, 259 (D.N.J. 2017)).

Defendants here do not dispute that Plaintiff had a disability within the NJLAD's definition of the term, nor that he was terminated from his position, the most straightforward

example of an adverse employment action. However, they accurately note that there is "no record evidence proffered by Plaintiff contending that individuals outside of his protected class were treated more favorably or were sought to perform his duties upon his termination." (ECF No. 54-2 at 8). As stated above, Plaintiff has largely chosen not to respond to or properly oppose the present motion for summary judgment — instead he has filed only a series of letters, none of which provide any factual support for any of his allegations.

"Though the Court will read the facts in the light most favorable to Plaintiff, the Court is not required to read facts that simply do not exist. Nor is the Court permitted to move forward a disability discrimination cause of action under the NJLAD if a plaintiff cannot first establish each of the prima facie elements." Guarneri v. Buckeye Pipe Line Services Co., 205 F. Supp. 3d 606, 615 (D.N.J. 2016). Even were this Court to interpret Plaintiff's letters as opposition briefs or the claims asserted in his filings as attempts to oppose Defendants' statement of material facts under Rule 56.1, it must be noted that none of the letters filed by Plaintiff after the present motion was filed address his disability claims in any detail whatsoever. In other words, Plaintiff has provided the Court with absolutely no opposing evidentiary support for his disability discrimination claims. To the extent his disability

discrimination claims are based on his termination, he has provided the Court no basis from which to conclude that he was treated less favorably than other individuals outside of his protected class or that Walmart sought such individuals to perform his duties after his termination.

And to the extent that the disability discrimination counts in the Complaint were based on Plaintiff's claim that he was "written up four times for refusing to do tasks that he was medically unable to do," (ECF No. 1-1 ¶ 15), Plaintiff has again failed to put forward sufficient evidence to raise a genuine dispute of fact regarding his *prima facie* case. Plaintiff himself, of course, has introduced no evidence at all at this stage; the only evidence in the record that would support this claim is Plaintiff's statement in his deposition, filed by Defendants, that he was reprimanded in the form of verbal "coachings" — however, Plaintiff openly concedes that he has no documentation to support this allegation or any proof that he was ever "written up" as alleged in his complaint, and that he can provide no details regarding when these "coachings" happened, or any other context at all besides the names of the individuals he claims gave them. (See ECF No. 54-2, Ex. 2 at 49:5-51:24). Defendants', on the other hand, have introduced into the record unopposed statements of fact and supporting evidence for their contention that Plaintiff was in fact never

punished or written up by a Walmart employee for failure to perform any task. (Def. SOMF at ¶¶ 38-39). Simply put, the Court finds Plaintiff's conclusory, vague allegations entirely insufficient to raise a genuine dispute of fact on this point, and accordingly finds that Plaintiff has failed to establish a *prima facie* case of disability discrimination on either front.

The Court briefly notes that, even if Plaintiff had demonstrated a *prima facie* case, Defendants' motion would still have been granted. As outlined above, the second stage in the McDonnell-Douglas framework involves the burden shifting to Defendants to demonstrate a neutral, nondiscriminatory basis for their actions, which Plaintiff must then counter with sufficient evidence to demonstrate that the proffered nondiscriminatory explanation was merely pretext. Defendants here have met their burden to put forward evidence to support their claim that Plaintiff was in fact repeatedly reprimanded and eventually terminated for repeated instances of disrespect towards co-workers and supervisors, insubordination, and related behavior that was entirely unrelated to his disability, and that he was in fact directly warned that failure to change his behavior would result in termination. (See Def. SOMF at ¶¶ 12-16, 20-24) (outlining Plaintiff's history of punishment while a Walmart employee for "lack of Respect for the Individual in the workplace and insubordination, due to various instances of

disrespectful behavior towards co-workers and supervisors"). And Defendants' argument that this was the real basis for his termination in 2017 is strongly supported by the fact that, even though Plaintiff did not suffer the injury that led to his disability until his second stint as a Walmart employee and Plaintiff only alleges in his Complaint that the harassment started at that same second job, he had already been fired from a separate Walmart store for essentially the same behavior in 2008. Id. at ¶¶ 2-3.

Once again, Plaintiff has entirely failed to put forward opposing evidence of his own, and therefore Defendants' properly supported statement of facts on this front must be considered admitted as the truth. Accordingly, even had Plaintiff demonstrated a *prima facie* case, Defendants have offered a nondiscriminatory explanation for their actions that Plaintiff has entirely failed to rebut as merely pretext. For these reasons, Defendants' motion for summary judgment on Counts I and II of the Complaint must be granted.

### B. Failure to Accommodate Claim

Plaintiff next asserts a claim that Defendants failed to reasonably accommodate his disability, also in violation of the NJLAD. Under the NJLAD, an employer must "make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can

demonstrate that the accommodation would impose an undue hardship." N.J. Admin. Code. Tit. 13, § 13-2.5; <u>see also</u> <u>Fitzgerald v. Shore Memorial Hosp.</u>, 92 F. Supp. 3d 214, 237 (D.N.J. 2015).

Again, Plaintiff's NJLAD claims are analyzed under the <u>McDonnell-Douglas</u> burden-shifting framework, under which he must first demonstrate the existence of a *prima facie* case. To state a *prima facie* case for failure to accommodate in violation of the NJLAD, Plaintiff must plead that (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist; and (4) the employee could have been reasonably accommodated. <u>Armstrong v. Burdette Tomlin Mem'l Hosp.</u>, 438 F.3d 240, 246 (3d Cir. 2006).

Here, Plaintiff's Complaint specifically alleges that he "made a request for a reasonable accommodation, that he be allowed to have certain lifting restrictions," and that "Defendants failed to reasonably accommodate plaintiff and failed to engage in any interactive process with plaintiff to determine whether a reasonable accommodation was possible." (ECF No. 1-1 at ¶¶ 30-31). Defendants, for their part, argue that they did in fact grant Plaintiff his requested accommodation for over three and a half years before his eventual termination.

The Court agrees.  The undisputed evidence in the record here unequivocally supports Defendants' claim that "Walmart went above and beyond in making good faith efforts to assist Plaintiff with his continued employment with the Company."  (ECF No. 54-2 at 4).  In his time as a Walmart employee, Plaintiff worked as a "Maintenance Assistant."  (Def. SOMF at ¶ 26).  In that position, his duties and essential functions included "cleaning all areas of the facility utilizing company tools, machinery, and approved chemicals, and to perform routine maintenance on machines and other equipment," and he was expected to perform certain physical activities, "including but not limited to, moving, lifting, carrying, and placing merchandise and supplies weighing up to 25 pounds without assistance, as well as the ability to reach overhead and below the knees by bending, twisting, pulling and stooping."  Id. at ¶¶ 27-28.

In February 2014, Plaintiff's physician informed Defendants that he would be undergoing a surgical procedure in March and would be out of work until June 6.  Id. at ¶ 29.  Defendants granted Plaintiff's request for the full 12 weeks of paid leave afforded to him by the Family Medical Leave Act ("FMLA").  When Plaintiff did not return to work at the end of those 12 protected weeks, Walmart than granted Plaintiff additional leave under its own policies, and eventually allowed Plaintiff to

return to his same position.  Id. at ¶¶ 31-32.  When he

returned, Plaintiff's health care provider faxed Defendants a

note stating that Plaintiff "may run the Zamboni[] machine and

sweep the floor," id. at ¶ 33, which combined with his doctor's

earlier note informing Defendants that Plaintiff would "would

not be able to lift more than 10 pounds, and should refrain from

activities such as bending, twisting and pulling upon his return

to work," id. at ¶ 29, served as a clear request for

accommodation due to his physical disability.

While Plaintiff's Complaint alleges that Defendant failed

to reasonably accommodate him or to engage in an interactive

process to determine what accommodations may be needed, the

evidence in the record, and Plaintiff's own testimony,

demonstrate the exact opposite to be true.  Rather than ignore

his request for accommodation or deny it, Defendants proceeded

to allow Plaintiff to limit his job duties to running the

Zamboni machine and sweeping the floor, despite the more

expansive expectations described above for a Maintenance

Assistant.  This fact is not in dispute at this stage: in his

deposition, Plaintiff himself explicitly and repeatedly admitted

that after he returned from his surgery, his only duties on the

job were to "[s]weep the floor, and drive [the] Zamboni."  (ECF

No. 54-4, Ex. 2 at 28:1-29:3).  In other words, Plaintiff, after

being permitted to take leave beyond that offered by the FMLA

before returning to his same position, produced to his employer a doctor's note stating that due to his surgery he would only be able to perform two of his general job duties moving forward, and Defendant permitted him to keep his job and perform only those two duties for the next three and a half years of his employment.

Plaintiff has put forward no evidence whatsoever to demonstrate that he was not given a reasonable accommodation — he was in fact granted the exact accommodation he requested, a point he openly admitted. Given that fact, the Court easily finds that Defendant has met its burden of showing that there is no genuine dispute of material fact as to Plaintiff's failure to accommodate claim, and will grant the motion for summary judgment as to that claim.

### C. **Racial and National Origin Harassment Claims**

Finally, Plaintiff has also asserted counts of both "racial harassment" and "national origin harassment," which this Court interprets as claims for a hostile work environment in violation of the NJLAD. As for the rest of his claims, Plaintiff's hostile work environment claims are analyzed under the McDonnell-Douglas framework. To initially establish a *prima facie* case of harassment on the basis of race or national origin, he must demonstrate that the defendant's conduct (1) would not have occurred but for his race or national origin; and

the conduct was (2) severe or pervasive enough to make a (3) reasonable person of the same protected class believe that (4) the conditions of employment are altered and the working environment is hostile or abusive. <u>Cardenas v. Massey</u>, 269 F.3d 251, 263 (3d Cir. 2001) (citing <u>Taylor v. Metzger</u>, 152 N.J. 490, 498, 706 A.2d 685, 688–89 (1998)).

"'[O]ffhanded comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." <u>Caver v. City of Trenton</u>, 420 F.3d 243, 262 (3d Cir. 2005) (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)). "Rather, the 'conduct must be extreme to amount to a change in the terms and conditions of employment ....'" <u>Id</u>. In determining if a work environment is hostile or abusive, courts look to totality of the circumstances, which should include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157, 168 (3d Cir. 2013) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993))

Plaintiff here alleges that he was repeatedly subjected to racial slurs by his coworkers and supervisors at Walmart. Specifically, in his complaint, letters filed on the Court's

docket, and in his deposition testimony entered into the record by Defendants, Plaintiff claims that he was referred to by three terms: "African nigger," "Blackie," and "Thief."  (See ECF No. 54-2, Ex. 2 at 20:5-16).  The highly offensive and racially discriminatory language allegedly directed at Plaintiff here goes well beyond discourtesy and rudeness, and the Court recognizes that under certain circumstances, a single utterance of a racial epithet can be deemed sufficiently severe and pervasive to create a hostile work environment.  Beaman-Bates v. Acme Markets, Inc., No. 17-5581, 2020 WL 3287128, at *6 (D.N.J. June 18, 2020).

However, Plaintiff, under the totality of the circumstances test, has failed to put forward sufficient facts to raise a genuine dispute of material fact as to whether these alleged statements created a hostile work environment.  First, the Court notes that there is simply no evidence in the record regarding how many times Plaintiff was allegedly referred to by these discriminatory terms, nor the circumstances under which these discriminatory comments were made.  As Defendants note, in his deposition Plaintiff did "not provide specific dates or context for these derogatory comments," instead alleging only that they occurred over a six-year period and were made by multiple employees.  (Def. SOMF at ¶ 41) (citing ECF No. 54-2, Ex. 2 at 20:10-15; 112:5-20).  Plaintiff does not make clear which

remarks were made how many times; nor is it clear exactly which
of Defendants' employees are supposed to have made which
remarks.  The only specific, clear allegations put forward by
Plaintiff in the evidence currently in the record are that two
co-workers of his, "David and his daughter, Paula" called him
all three of the terms listed above.  (ECF No. 54-2, Ex. 2 at
20:2-19).  However, in the excerpts from his deposition
testimony currently before the Court, Plaintiff fails to state
how many times David and Paula called him these names, and fails
to provide any other context whatsoever to these specific
incidents.  While Plaintiff does appear to name a few other
individuals who allegedly harassed him, there is no evidence
currently in the record that provides any other information or
context, and Plaintiff's excerpted deposition testimony does not
specifically accuse any of these other individual employees of
any specific acts beyond conclusory allegations of "harassment."
(See id. at 12:1-5).

Instead, even when viewed in the light most favorable to
Plaintiff, the Court is only presented with conclusory
allegations that two co-workers called him several offensive
terms at some point in time between 2011 and 2017.  As
Defendants note, under New Jersey law the analysis of whether
specific examples of racial or national origin discrimination
are severe or pervasive enough to create a hostile work

environment is inherently fact-specific and fact intensive,
requiring courts to take a detailed look at the specific
evidence before them and compare it to other previous cases
under the NJLAD or Title VII.  Plaintiff here makes such an
analysis impossible.  Were the Court to accept the specific
factual allegations made by Plaintiff in his deposition
testimony as the truth, it would have nothing more before it but
the fact that two co-workers called Plaintiff a racial slur and
other offensive names an unknown number of times, in an unknown
context, on some unknown dates, and that some other employees
"harassed" him in some unknown way.

Similarly, while the severity or pervasiveness of alleged
harassment can be sufficient for a juror to conclude that a
reasonable person would have found the terms of their employment
altered without further supporting evidence, the Court notes
that Plaintiff has also entirely failed to put forward any
evidence that these incidents impacted his work performance or
ability to do his job.  Defendants' evidence demonstrates that,
from 2010 up until Plaintiff's termination in 2017 — a period of
years which encompasses the entire timeframe in which the
Complaint alleges the racially discriminatory comments occurred
— Plaintiff received the exact same performance rating each
year.  (Def. SOMF at ¶ 44) (citing ECF No. 54-5, Ex. 20).  While
the Court recognizes that Defendants' own rating system may not

be the perfect means by which to measure the impact of racial harassment on an employee's ability to do his job, Plaintiff here has not put forward any contradictory evidence to dispute Defendants' evidence and analysis.

Importantly, even were the Court to concede that Plaintiff has sufficiently established a *prima facie* case, he nonetheless has failed to sufficiently establish that Defendants should be held liable for the statements made by their employees. "In New Jersey, an employer is liable for a co-worker's harassing conduct only if 'management-level employees knew, or in the exercise of reasonable care should have known, about the campaign of harassment.'" Nuness v. Simon and Schuster, Inc., 221 F.Supp.3d 596, 604 (D.N.J. 2016) (quoting Herman v. Coastal Corp., 791 A.2d 238, 252 (N.J. Super. Ct. App. Div. 2002)). "Furthermore, the plaintiff must show that the employer failed to provide a reasonable avenue for complaint or was aware of the alleged harassment and failed to take appropriate remedial action." Id. at 605 (citing Weston v. Pennsylvania, 251 F.3d 420, 426–27 (3d Cir. 2001)).

Plaintiff's Complaint does directly allege that multiple supervisors referred to him by racial slurs. (ECF No. 1-1 at ¶¶ 17). However, factual allegations found only in a complaint are entirely insufficient to defeat summary judgment; the only actual evidence currently before the Court that could plausibly

support Plaintiff's claims, the excerpts from his deposition transcripts filed by Defendants, only shows Plaintiff claiming that he was subjected to racially discriminatory remarks by two co-workers, rather than including any allegations that his supervisors called him any specific terms.  New Jersey and federal law is clear that "employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  Beaman-Bates, 2020 WL 3287128, at *6.  Here, the supportive evidence for Plaintiff is deposition testimony which only specifically names two co-workers, and which puts forward no evidence that he formally reported these issues.  In fact, his deposition testimony appears to imply that he did not file any formal complaints despite Defendants' clearly stated policies and avenues for filing such a complaint.  (See Def. SOMF at ¶ 42) (citing ECF No. 54-2, Ex. 2 at 75:17-76:22; 110:1-6).

While it seems entirely possible that Plaintiff may have been able to avoid summary judgment on this claim, Plaintiff's failure to truly oppose the present motion, or to put forward any evidence at all in support of his allegations, is once again fatal for his complaint.  Defendants have provided this Court with a statement of facts and supporting evidence asserting that

Plaintiff's work performance did not suffer and that he did not appear to file any formal complaint regarding racial harassment, and Plaintiff has put forward nothing more than conclusory allegations that two co-workers referred to him by racially discriminatory terms an unknown number of times under unknown circumstances. As repeatedly stated above, with no true opposition filed by Plaintiff here, Defendants' supported statement of facts must be viewed as admitted for the purposes of the present motion for summary judgment. With that being the case, Plaintiff has again failed to establish a *prima facie* case for hostile work environment under the NJLAD, and Defendants' motion for summary judgment must be granted as to Counts IV and V of the Complaint.[1]

## CONCLUSION

For the reasons expressed above, Defendants' motion for summary judgment (ECF No. 54) will be granted.

An appropriate Order will be entered.

Date: July 7, 2021 /s Noel L. Hillman
At Camden, New Jersey NOEL L. HILLMAN, U.S.D.J.

---

[1] As the Court has found that Defendants' motion for summary judgment must be granted as to each of Plaintiff's NJLAD claims, Plaintiff's final claim for equitable relief, which is entirely dependent on those claims, must also be dismissed.